IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RONALD CHANDLER, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:19-cv-00014-O |
| | § | |
| PHOENIX SERVICES, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs Ronald Chandler's, Chandler Manufacturing, LLC's, Newco Enterprises, LLC's, and Supertherm Heating Services, LLC's (collectively, the "Chandler Plaintiffs") Motion to Compel Production of Documents Subject to Waiver of Privilege Pursuant to the Crime/Fraud Exception, and for Attorney Depositions, and Brief ("Motion to Compel") and Appendix in Support (ECF Nos. 29–30), filed November 12, 2019; Defendants Phoenix Services, LLC's and Mark H. Fisher's (collectively, the "Phoenix Defendants") Response and Appendix in Support (ECF Nos. 34, 36), filed December 3, 2019; and Plaintiffs' Reply and Appendix in Support (ECF Nos. 40–41), filed December 12, 2019. Also before the Court are Plaintiffs' Motion to Disqualify Devan Padmanabhan, Esq. and Paul Robbennolt, Esq., as Trial Counsel, and Brief ("Motion to Disqualify") (ECF No. 31), filed November 12, 2019; Defendants' Response and Appendix in Support (ECF Nos. 35–36), filed December 3, 2019; and Plaintiffs' Reply and Appendix in Support (ECF Nos. 42–43), filed December 16, 2019.

Having reviewed the motions, briefing, and applicable law, the Court finds that the Chandler Plaintiffs' Motion to Compel should be and is hereby **GRANTED in part** and **DENIED in part.** The Court further finds that the Chandler Plaintiffs' Motion to Disqualify should be and

1

is hereby **GRANTED in part** and **DENIED in part**. In accordance with the Court's instructions below, the Phoenix Defendants are **ORDERED** to produce to the Court "all legal advice provided by the attorneys for HOTF and Phoenix related to the assertion of the '993 Patent against Plaintiffs in the underlying litigation, which remains stayed in this Court," for the Court's *in camera* review. Pls.' Mot. Compel 2, ECF No. 29. The Phoenix Defendants are **further ORDERED** to make attorney Devan Padmanabhan ("Padmanabhan") available for a deposition during the month of February 2020. The Court **HOLDS** that Padmanabhan is hereby disqualified from participating as the Phoenix Defendants' counsel before the jury at the parties' upcoming jury trial.

I. **FACTUAL BACKGROUND**

In its December 17, 2019 Order ruling on the Phoenix Defendants' Motion to Dismiss, the Court laid out the extensive factual background of this case and the related *Energy Heating* litigation in the District of North Dakota and Federal Circuit courts. *See Chandler v. Phoenix Servs.*,— F. Supp. —, 2019 WL 6894687, at *1–3 (N.D. Tex. Dec. 17, 2019). The Court assumes familiarity and only adds additional facts pertinent to the Chandler Plaintiffs' Motion to Compel and Motion to Disqualify.

In 2018, the Federal Circuit "affirm[ed] the district court's conclusion that the ['993 P]atent is unenforceable for inequitable conduct." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1299 (Fed. Cir. 2018) [hereinafter *Energy Heating*]. As a result, the Phoenix Defendants "waived privilege" in this litigation "with respect to inequitable conduct and the facts that gave rise to the inequitable conduct finding." Defs.' Resp. Mot. Compel 1, ECF No. 34. The Phoenix Defendants "have not withheld as privileged any documents or information pertaining to the prosecution of [the '993 Patent]; the Defendants' knowledge of or discussions with counsel about the facts and circumstances giving rise to the inequitable conduct finding; and any

2

consideration or discussion of inequitable conduct in connection with the decision to file a patent infringement suit against the Plaintiffs." *Id.* But they withhold all privileged information not related to the inequitable conduct. *See generally id.*

The Phoenix Defendants' attorneys, Padmanabhan and Paul Robbennolt ("Robbennolt"), also represented Phoenix Services, LLC ("Phoenix") subsidiary Heat On-The-Fly, LLC ("HOTF") in the *Energy Heating* litigation. Pls.' Mot. Disqualify 4, ECF No. 31. In their roles as HOTF's counsel, Padmanabhan and Robbennolt were central to the litigation underlying this lawsuit—that in which the Federal Circuit concluded the '993 Patent was unenforceable as a matter of law. *See Energy Heating*, 889 F.3d at 1303. Currently, in addition to serving as trial counsel in this case, Padmanabhan represents HOTF against the Chandler Plaintiffs in *Newco Enterprises, LLC v. Super Heaters North Dakota, LLC*, 7:14-CV-87-O, which is stayed in this Court. In spite of the Federal Circuit's ruling that the '993 Patent is unenforceable, HOTF maintains its patent-infringement claims against the Chandler Plaintiffs. *See id.* Countercl., ECF No. 33.

On December 6, 2019, the Chandler Plaintiffs deposed Mark H. Fisher ("Fisher"), who testified as the corporate representative of Phoenix. *See* Pls.' App. Supp. Reply Mot. Disqualify Ex. A, ECF No. 43-2. During his deposition, Fisher testified that "the first time Phoenix Services, LLC found out about the 61 prior frac jobs referenced by the Federal Circuit[, which] could be the basis for inequitable conduct to render the '993 Patent unenforceable[,] was after the judgment in the Energy Heating litigation was rendered" *Id.* at 4. Fisher further stated he did not have "any knowledge of any inequitable conduct," he did not have any "belief there was any inequitable conduct," and there was no "advice provided to [him] that would lead [him] to think there was any risk of inequitable conduct." *Id.* at 6–7. When asked which lawyers he relied on at that time, Fisher mentioned Padmanabhan first. *Id.* at 7.

3

## II. LEGAL STANDARD

### A. The Crime-Fraud Exception to Attorney-Client and Work-Product Privileges

"Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005) (internal citation omitted). Courts recognize this privilege "to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal citation omitted).

"To invoke the crime-fraud exception, a party must establish a *prima facie* case that a crime has been committed." *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1008 (5th Cir. 1992). To make out a prima facie case, the movant "must produce evidence 'such as will suffice until contradicted and overcome by other evidence . . . a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.'" *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re Int'l Sys. & Controls Corp. Secs. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)).

### B. Deposing Opposing Counsel

"Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney," so courts in the Fifth Circuit employ the practice "only in limited circumstances." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999). "In order to determine when it is proper to allow opposing counsel to be deposed, the Fifth Circuit applies a three factor test that the party seeking the deposition must meet." *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 6:07-cv-559, 2009 WL 2174925, at *2 (E.D. Tex. July 21, 2009). The movant must show: "'(1) no other

means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.'" *Id.* (quoting *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999)).

### C. Disqualifying Opposing Counsel

"[D]isqualification cases are governed by state and national ethical standards adopted by the court." *In re Am. Airlines*, 972 F.2d 605, 610 (5th Cir. 1992). The Fifth Circuit has stated that "[w]hen considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (internal citation omitted). In the Northern District of Texas, attorneys "are subject to the Texas Disciplinary Rules of Professional Conduct [('Texas Rules')]." *Asgaard Funding LLC v. ReynoldsStrong LLC*, 3:19-CV-1823-B, 2019 WL 6702119, at *3 (N.D. Tex. Dec. 9, 2019) (citing N.D. Tex. Civ. R. 83.8(e)). The Fifth Circuit has also "recognized the ABA Model Rules of Professional Conduct (Model Rules) as the national standards to consider in reviewing motions to disqualify." *In re ProEducation Int'l, Inc.*, 587 F.3d at 299.

Pursuant to both the Model Rules and the Texas Rules, if a lawyer is likely to be a necessary witness in a trial, he typically should not serve as an advocate during that trial. *See* Model Rules of Prof'l Conduct r. 3.7(a) (West 2019) ("A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."); Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2019) ("A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer

5

is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless . . . ."). These rules avoid "[c]ombining the roles of advocate and witness," which "can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Model Rules of Prof'l Conduct r. 3.7 cmt. 1.

The Model Rules and Texas Rules "may furnish some guidance in those procedural disqualification disputes where the party seeking disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles," but disqualification "should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice." Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 10; *see also* Model Rules of Prof'l Conduct r. 3.7 cmt. 4 ("[I]n determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.").

## III. ANALYSIS

In their Motion to Compel and Motion to Disqualify, the Chandler Plaintiffs ask the Court to do three things: (1) compel the Phoenix Defendants to produce documents "regarding pre-suit investigations regarding the '993 Patent, and the decision to assert the '993 Patent in litigation, and the decision to maintain the litigation," Pls. Mot. Compel 9, ECF No. 29; (2) compel the Phoenix Defendants to "make Devan Padmanabhan, Esq. and Paul Robbennolt, Esq. available for an oral deposition," *id.* at 10; and (3) order that Padmanabhan and Robbennolt "shall not participate as advocates in the presence of the jury at the trial of this matter," Pls.' Mot. Disqualify 6, ECF No. 31. The Court addressed each request in turn.

### A. Motion to Compel Production of Documents

"A finding of inequitable conduct may . . . spawn antitrust and unfair competition claims . . . [and] may also prove the crime or fraud exception to the attorney-client privilege." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011). The Chandler Plaintiffs invoke this principle and assert that the District of North Dakota's finding of inequitable conduct, affirmed by the Federal Circuit, "proves the fraud that supports application of the crime/fraud exception to pierce the attorney-client and work product privileges of Defendants as to the assertion of the fraudulently procured '993 Patent." Pls.' Mot. Compel 2, ECF No. 29. They argue the exception applies to "all legal advice provided by the attorneys for HOTF and Phoenix related to the assertion of the '993 Patent against Plaintiffs in the underlying litigation, which remains stayed in this Court." *Id.*

The Phoenix Defendants do not dispute that the finding of inequitable conduct invoked the crime-fraud exception. In fact, they have "already waived privilege with respect to inequitable conduct and the facts that gave rise to the inequitable conduct finding." Defs.' Resp. Mot. Compel 1, ECF No. 34. They instead dispute the scope of the exception. The Phoenix Defendants contend that "[p]rivileged information to the pre-suit investigation and the decision to assert a patent infringement claim against Plaintiffs that is **not** related to inequitable conduct should not be the subject of an order compelling production." *Id.* (emphasis in original). According to the Phoenix Defendants, "[t]he only fraud that provides a basis for Plaintiffs' motion is inequitable conduct in the proceedings before the United States Patent and Trademark Office [('PTO')] to obtain the '993 Patent, and the Defendants' assertion of a patent that they allegedly knew was unenforceable against Plaintiffs." *Id.* Thus, the issue is whether the crime-fraud exception to attorney-client and

work-product privilege extends beyond HOTF's inequitable conduct to the fraud Defendants allegedly committed by asserting the '993 Patent against Plaintiffs through litigation.

1. <u>Prima Facie Case of Fraud</u>

When reviewing the evidence, the Court must determine whether "the party seeking to breach the walls of privilege [has] ma[de] out a prima facie case" of fraud. *In re Int'l Sys. & Controls Corp. Secs. Litig.*, 693 F.2d at 1242. "To make the necessary *prima facie* showing for the application of the crime-fraud exception here, the [movant] must produce evidence 'such as will suffice until contradicted and overcome by other evidence . . . a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.'" *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re Int'l Sys. & Controls Corp. Secs. Litig.*, 693 F.2d at 1242).

Here, there is no question that the Chandler Plaintiffs made a prima facie case of fraud based on HOTF's inequitable conduct in procuring the '993 Patent—nor do the Phoenix Defendants contest it. But the Court also finds that, based on the Federal Circuit's ruling in the *Energy Heating* litigation and the additional evidence presented, the Chandler Plaintiffs have made the requisite prima facie showing of fraud based on both sham patent litigation and *Walker Process* fraud.

a. *Sham Patent Litigation*

The Court first addresses the crime-fraud exception with regard to the alleged sham patent litigation. Though the Federal Circuit has not addressed the crime-fraud exception in the sham-patent-litigation context, several circuits—including the Fifth—have addressed the exception in similar contexts. For example, in *Burlington Northern*, the Fifth Circuit applied the exception to attorney-client communications and work product in the context of sham *antitrust* litigation. 822

F.2d 518 (5th Cir. 1987). There, the Fifth Circuit held that "[t]o the extent the [defendants] sought out their attorneys to bring lawful suits and consulted with them in connection with such suits, they were within the scope of th[e] protection" of attorney-client privilege and work-product immunity. *Id.* at 525. The Fifth Circuit distinguished those lawful suits from "sham" litigation, which "was itself a violation of the antitrust laws" and thus unprotected by the privileges. *Id.* The Second Circuit came to the same conclusion in *Richard Roe*. 168 F.3d 69 (2d Cir. 1999). The court first noted that "one may violate the antitrust laws by bringing baseless litigation intended to delay entry into a market by a competitor." *Id.* at 71. If, under those circumstances, "the litigation objectively lacked a factual or legal basis," the court stated that "some communications or work product generated in the course of such litigation might, after a rigorous *in camera* review by a court for relevance, fall within the crime-fraud exception." *Id.*

The Court sees no reason why the exception should apply differently when the sham litigation involves patent infringement. The Chandler Plaintiffs have established a prima facie case of sham patent litigation by applying the Federal Circuit's conclusions—that HOTF engaged in "equitable conduct" and "bad faith" representation of an invalid patent—to the assertion of the '993 Patent through the Phoenix Defendants' patent-infringement claims against the Chandler Plaintiffs. *See Energy Heating*, 889 F.3d at 1305. Thus, the crime-fraud exception applies to all attorney-client communications and work product made in furtherance of the Phoenix Defendants' assertion of '993 Patent through the alleged sham patent litigation.

      b. *Walker Process Fraud*

The Court next addresses the crime-fraud exception with regard to the alleged *Walker Process* fraud. The Federal Circuit has explicitly held that a party can "successfully pierce the attorney-client privilege under the crime-fraud exception" by establishing *Walker Process* fraud.

9

*Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1358 (Fed Cir. 2011) (citing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). And when discussing Federal Circuit precedent, the Fifth Circuit recently stated that "[i]nequitable conduct resembles the fraud element of *Walker Process*, in that it requires proof of misrepresentation, scienter, and a showing of materiality or causation. Over time, it has evolved to be virtually congruent with intentional fraud under *Walker Process*." *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 439 (5th Cir. 2019) (citing *Therasense*, 649 F.3d at 1290; J. Thomas Roesch, *Patent Law and Antitrust Law: Neither Friend nor Foe, but Business Partners*, 13 SEDONA CONF. J. 95, 100 (2012)).

Given that inequitable conduct—which the District of North Dakota found and the Federal Circuit affirmed, *Energy Heating*, 889 F.3d at 1299—constitutes fraud under the crime-fraud exception, the logical extension is that *Walker Process* fraud also constitutes fraud sufficient to negate the privilege. Further, the Federal Circuit's affirmance of HOTF's inequitable conduct establishes the requisite prima face case of fraud based on *Walker Process* fraud. Accordingly, insofar as the Phoenix Defendants' otherwise privileged attorney-client communications and work product were made in furtherance of the alleged *Walker Process* fraud violations, the crime-fraud exception applies.

2. *In Camera* Review

The Phoenix Defendants oppose the Chandler Plaintiffs' entire request by referring to specific types of documents that should remain privileged. They say "[d]ocuments regarding Defendants' pre-suit investigation, decision to assert the '993 Patent against Plaintiffs, and assertion of the '993 Patent against Plaintiffs, conceivably cover documents that have nothing to do with the alleged fraud that provides the basis for Plaintiffs' motion." Defs.' Resp. Mot. Compel 7, ECF No. 24. The Phoenix Defendants provide two examples of privileged documents not

encompassed by the exception: (1) their infringement analyses and (2) their validity analysis. *See id.* at 7–8. The Court agrees: Plaintiffs' request is likely overbroad. But limiting the evidence discoverable under the crime-fraud exception to documents related to the inequitable conduct before the PTO is too narrow.

To strike the correct balance, the Court will conduct an *in camera* review of the potentially responsive documents. *Cf. Zolin*, 491 U.S. at 574–75 (holding that a district court "may engage in *in camera* review at the request of the party opposing the privilege" if that party has "present[ed] evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability."). Indeed, when a party asserts privilege, "the only way the district court *can* determine if any of the documents are subject to a subpoena under the crime-fraud exception is by reviewing them. Ordering production *en masse* creates the potential that some material not within the scope of the crime-fraud exception could be ordered produced." *In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir. 1986) (internal emphasis added).

The Court therefore **ORDERS** Defendants to produce documents "regarding pre-suit investigations regarding the '993 Patent, and the decision to assert the '993 Patent in litigation, and the decision to maintain the litigation." Pls.' Mot. Compel 9, ECF No. 29. However, the Court **LIMITS** this instruction to only attorney-client communications and work product relating to the stayed *Newco Enterprises*, 7:14-CV-87-O litigation. The Phoenix Defendants should not include technical analyses regarding infringement or information regarding the validity of the '993 Patent (as related to prior art). The Court **further ORDERS** Defendants to submit with their responsive documents a cover letter explaining the documents and instructing the Court regarding how to review them.

### B. Motion to Compel Depositions

The Chandler Plaintiffs also move to compel the Phoenix Defendants to make their trial attorneys, Padmanabhan and Robbennolt, available for depositions. Padmanabhan and Robbennolt were both counsel for HOTF in the *Energy Heating* litigation, in which the Federal Circuit affirmed the district court's finding that HOTF obtained the '993 Patent through inequitable conduct. *See* Pls.' Mot. Compel 7, ECF No. 29 (depicting Padmanabhan's and Robbennolt's electronic signatures on court filings). The Phoenix Defendants argue that "the Plaintiffs cannot demonstrate that the Defendants' trial counsel are 'necessary' witnesses to an essential fact; they therefore should not be compelled to testify." Defs.' Resp. Mot. Compel 8, ECF No. 34. The Phoenix Defendants say "Plaintiffs have other means available to obtain the information they seek," such as "seek[ing] the same information from Defendants and their employees who will have knowledge regarding their decision to assert the '993 Patent and the basis for their claims." *Id.* at 9. They contend "Mark Fisher and other employees of Phoenix . . . are equally capable of testifying to the legal advice they were given and their basis and reason for filing suit." Defs.' Resp. Mot. Disqualify 10, ECF No. 35.

According to the Chandler Plaintiffs, "[o]ne of the key issues at trial will be for Plaintiffs to prove before the jury that if the infringement allegations brought by HOTF as to the '993 Patent in the *Energy Heating* litigation were brought in 'bad faith[,]' the same must be true for the virtually identical allegations of infringement of the '993 Patent in the underlying litigation by HOTF against Plaintiffs." Pls.' Mot. Disqualify 4–5, ECF No. 31. Plaintiffs contend Defendant Fisher made Padmanabhan a necessary witness during his December 6, 2019 deposition, during which he stated he did not have "any knowledge of any inequitable conduct," did not have any "belief there was any inequitable conduct," and there was no "advice provided to [him] that would

lead [him] to think there was any risk as to inequitable conduct." Pls.' App. Supp. Reply Mot. Disqualify 7, ECF No. 43-2. When asked which lawyers he relied on at that time, Fisher mentioned Padmanabhan first. *Id.* at 7. Though Fisher said he did not "f[ind] out [that] the 61 prior frac jobs referenced by the Federal Circuit could be the basis for inequitable conduct," *id.* at 4, until the Federal Circuit's ruling, prior *Energy Heating* filings showed that Padmanabhan and Robbennolt did have knowledge of the inequitable conduct claim before filing the infringement claim against Plaintiff Supertherm, *see* Pls.' Reply Mot. Disqualify 5–6, ECF No. 42.

"In order to determine when it is proper to allow opposing counsel to be deposed, the Fifth Circuit applies a three factor test that the party seeking the deposition must meet." *Davis-Lynch, Inc.*, 2009 WL 2174925, at *2. The party must show: "'(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.'" *Id.* (quoting *Nguyen*, 197 F.3d at 208). Though the Phoenix Defendants claim the Chandler Plaintiffs cannot satisfy the first element of the test because they can obtain the same information from the Phoenix Defendants themselves, the deposition testimony of Fisher—Phoenix CEO and sole employee of HOTF—belies that assertion. Fisher's testimony demonstrates that Padmanabhan had knowledge that he did not share with HOTF and Phoenix. As Fisher stated he was not privy to the key information the Chandler Plaintiffs seek, Padmanabhan should be required to testify as to the decision to proceed with the patent-infringement claims.

Finally, though Robbennolt was also listed as counsel on several *Energy Heating* filings related to the inequitable conduct claim, the Chandler Plaintiffs do not allege or even suggest that he may have knowledge that Padmanabhan does not also have. Because Fisher stated he relied on Padmanabhan, and because exercising this authority should be used as sparingly as possible,

Padmanabhan is the more relevant—and thus necessary—of the two attorney-witnesses. Accordingly, Padmanabhan is a necessary witness, and Robbennolt is not. The Court **ORDERS** the Phoenix Defendants to make Padmanabhan available for a deposition during February 2020.

### C. Motion to Disqualify

Based on their argument that Padmanabhan is a necessary witness, the Chandler Plaintiffs argue that Padmanabhan's testimony will include "hotly contested fact issues . . . and under [Texas Disciplinary Rule of Professional Conduct] 3.08, there is simply no way to avoid confusion of the jury," if he "act[s] as [an] advocate[] before the jury, as well as providing contested evidence to be considered by the jury as to liability of the Defendants." Pls.' Mot. Disqualify 2, ECF No. 31. The Phoenix Defendants first respond by reiterating that Padmanabhan is not a necessary witness. *See* Defs.' Resp. 9–13, ECF No. 35. Then, they argue that "[e]ven if Plaintiffs had proven that Defendants' trial counsel were 'necessary' witnesses, their motion would fail because Plaintiffs waived their right to seek disqualification by unreasonably delaying their motion." *Id.* at 13. Finally, they argue that the Court should deny Plaintiffs' Motion to Disqualify because it would unduly prejudice Defendants and deprive them of their chosen trial counsel. *Id.* at 14–15.

First, for the reasons discussed above, the Phoenix Defendants' necessary-witness argument fails. Padmanabhan is a necessary witness.

The Phoenix Defendants' unreasonable-delay argument also fails. The Phoenix Defendants claim that the Chandler Plaintiffs have no excuse for "failure to file this motion at the very outset of this case, as soon as they knew of the facts that gave rise to the motion, and before Defendants would suffer hardship if trial counsel were disqualified in the midst of the litigation." *Id.* at 14. But considering Padmanabhan's role in the underlying *Energy Heating* litigation, he and the Phoenix Defendants should have been aware that there was a potential for disqualification—and he

14

arguably should have recused earlier. *See* Model Rules of Prof'l Conduct r. 3.7(a); Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a). Under Texas Rule 3.08, when a lawyer who "knows or believes that he or she may be a necessary witness" considers retaining his position as an advocate, he "is obligated . . . to consider the possible consequences of those dual roles for both the lawyer's own client and for opposing parties." Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 1. As Padmanabhan was lead counsel in the *Energy Heating* litigation—the basis for Plaintiffs' sham patent litigation claims—he should have immediately been aware that his involvement and conduct would be at issue such that he could be called as a necessary witness in this case. Moreover, on December 6, 2019, Padmanabhan's own client made him a necessary witness by suggesting that he did not keep HOTF and Phoenix apprised of the details of the ongoing lawsuits. Thus, given the circumstances, the Phoenix Defendants should have anticipated their *Energy Heating* and *Newco Enterprises* counsel could likely be called to testify as necessary witnesses.

Finally, because Robbennolt is not a necessary witness and will not be disqualified from participating as trial counsel, the Phoenix Defendants' prejudice argument also fails. The Phoenix Defendants argue that Padmanabhan and Robbennolt "have obtained a detailed and thorough understanding of the complex issues underlying this case during the ten months of litigation" and "[i]t would be highly prejudicial to Defendants if they were deprived of their chosen counsel, particularly at this late stage of the litigation." Defs.' Resp. 15, ECF No. 35. But importantly, the Texas Rule "does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal." Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 8. Instead, it "prohibits any testifying lawyer who could not serve as an advocate from taking an active role before the tribunal in the presentation of the matter." *Id.* And "[e]ven in those

15

situations . . . another lawyer in the testifying lawyer's firm may act as an advocate, provided the client's informed consent is obtained." *Id.*; *see also* Model Rules of Prof'l Conduct R. 3.7(b) ("A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.").

Though disqualification "should not be used as a tactical weapon to deprive the deposing party of the right to be represented by the lawyer of his or her own choice," Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 10, the Chandler Plaintiffs have demonstrated that Padmanabhan is a necessary witness, and the Court is persuaded that his "[c]ombin[ed] roles of advocate and witness" would likely confuse the jury and cause prejudice to either or both sides, Model Rules of Prof'l Conduct r. 3.7 cmt. 1. However, the Court only disqualifies Padmanabhan from representing the Phoenix Defendants before the jury; his colleague, Robbennolt, may still serve as trial counsel. Moreover, Padmanabhan is not disqualified from participating in pre-trial preparation. Accordingly, Padmanabhan can continue to represent the Phoenix Defendants and can help Robbennolt prepare for trial. Thus, the Phoenix Defendants should not be unduly prejudiced.

## IV. CONCLUSION

Having reviewed the Chandler Plaintiffs' Motion to Compel and Motion to Disqualify, related briefing, and applicable law, the Court **HOLDS** that the Motion to Compel (ECF No. 29) should be and is hereby **GRANTED in part** and **DENIED in part** and the Motion to Disqualify (ECF No. 31) should be and is hereby **GRANTED in part** and **DENIED in part.**

The Court **HOLDS** that the crime-fraud exception extends beyond the finding of inequitable conduct to all attorney-client communications and work product related to the alleged sham patent litigation and *Walker Process* fraud. Accordingly, the Court **ORDERS** the Phoenix Defendants to produce documents pertaining to the *Newco Enterprises*, 7:14-CV-87-O litigation—

specifically, those that involve the Phoenix Defendants' and HOTF's (1) pre-suit investigations, (2) decision to assert the '993 Patent in litigation against the Chandler Plaintiffs, and (3) decision to maintain the suit following issuance of the Federal Circuit's *Energy Heating*, 889 F.3d 1291 ruling. *See infra* p. 11. The Court **further ORDERS** Defendants to submit with their responsive documents a cover letter explaining the documents and instructing the Court regarding how to review them.

The Court **HOLDS** that Devan Padmanabhan is a necessary witness. Accordingly, the Court **ORDERS** the Phoenix Defendants to make Padmanabhan available for a deposition during February 2020.

The Court **HOLDS** that, as a necessary witness, Padmanabhan should be and is hereby **DISQUALIFIED** from serving as the Phoenix Defendants' trial counsel. He may continue to serve as pre-trial counsel.

The Parties are **ORDERED** to confer and submit to the Court a joint motion proposing an extended discovery deadline on or before **February 6, 2020**. All other deadlines shall remain in place.

**SO ORDERED** on this **30th day** of **January, 2020**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE