**FILED**

**September 6, 2022**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2022

Lyle W. Cayce
Clerk

No. 21-10626

RONALD CHANDLER; CHANDLER MFG., L.L.C.; NEWCO
ENTERPRISES, L.L.C.; SUPERTHERM FLUID HEATING
SERVICES, L.L.C.,

*Plaintiffs—Appellants,*

*versus*

PHOENIX SERVICES, L.L.C.; MARK H. FISHER,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:19-CV-14

Before WIENER, GRAVES, and DUNCAN, *Circuit Judges.*

STUART KYLE DUNCAN, *Circuit Judge:*

Oilfield service companies brought antitrust claims against another
company for enforcing a fraudulent fracking patent. This is called a *Walker
Process* suit. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382
U.S. 172 (1965). The district court dismissed some of the claims for lack of
standing and others as time-barred. The case was then appealed to the
Federal Circuit, which is where most antitrust cases of this ilk go. But the
Federal Circuit found the case had no live patent issues—the underlying

No. 21-10626

patent had already been declared invalid—and so transferred the case to us. *See Chandler v. Phoenix Servs. LLC*, 1 F.4th 1013 (Fed. Cir. 2021).

We differ with the Federal Circuit over whether we have appellate jurisdiction over *Walker Process* cases. *Compare Xitronix Corp. v. KLA-Tencor Corp.* (*Xitronix II*), 916 F.3d 429 (5th Cir. 2019), *with Xitronix Corp. v. KLA-Tencor Corp.* (*Xitronix I*), 882 F.3d 1075 (Fed. Cir. 2018). But the Supreme Court has told us to accept circuit-to-circuit transfers if the jurisdictional question is "plausible." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 819 (1988). While we continue to disagree with the Federal Circuit on this point, we do not find the transfer implausible. We therefore accept the case and affirm the district court's judgment.

I.

A.

Plaintiffs are oil-field manufacturing and services companies (collectively, "Chandler")[1] who brought *Walker Process* fraud and sham patent litigation claims against defendants Phoenix Services, LLC, and its CEO, Mark Fisher (collectively, "Phoenix"). A *Walker Process* claim is one under § 2 of the Sherman Act alleging enforcement of a fraudulently obtained patent. *See Walker Process*, 382 U.S. at 174 ("[T]he enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present."); 15 U.S.C. § 2; *see also, e.g.*, *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016) (discussing *Walker Process* claims). The patent at

---

[1] Plaintiffs are Ronald Chandler; Chandler Manufacturing, LLC; Newco Enterprises, LLC; and Supertherm Fluid Heating Services, LLC.

No. 21-10626

issue here is U.S. Patent No. 8,171,993 (the "'993 Patent"), which was issued to Mark Hefley, founder of Heat On-The-Fly, LLC ("HOTF").

We first sketch the patent's background. The '993 Patent covers a water-heating technology developed by Hefley for use in fracking.[2] Hefley first applied for the patent on September 18, 2009. The United States Patent and Trademark Office ("USPTO") issued the patent on May 8, 2012. Litigation soon erupted, however. From early 2013 to 2018, HOTF and rival companies sparred over the '993 Patent's validity in federal district court in North Dakota. *See generally Energy Heating, LLC v. Heat On-The-Fly, LLC*, No. 4:13-CV-10, 2016 WL 10837799 (D.N.D. Jan. 14, 2016) [the "*Energy Heating* Litigation"]. This ended with the Federal Circuit upholding the district court's finding that the patent was unenforceable due to Hefley's inequitable conduct in procuring it. *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1296 (Fed. Cir. 2018). The gist was that Hefley knowingly violated the "on-sale bar" by failing to disclose numerous non-experimental sales and public uses of his invention prior to the patent's "critical date." *Id.* at 1297–1303.[3]

---

[2] "Fracking is a 'well stimulation' technique" in which "oil and gas producers inject water, sand, and certain chemicals into tight-rock formations to create fissures in the rock that allow oil and gas to escape for collection in a well." *Wyoming v. Zinke*, 871 F.3d 1133, 1137 (10th Cir. 2017) (citation omitted). Hefley's "invention relates to heating water on demand or inline during the frac[k]ing process, instead of using preheated water in large standing tanks." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1297 (Fed. Cir. 2018) (citation omitted).

[3] "A patent is invalid under the on-sale bar [in then-applicable 35 U.S.C. § 102(b)] if, before the critical date, the invention was both (1) the subject of a commercial sale or offer for sale and (2) ready for patenting." *Energy Heating*, 889 F.3d at 1299 (citations omitted). The bar does not apply if a sale was "a bona fide experiment." *Id.* at 1299–1300 (citation omitted). For purposes of the bar, the "critical date" means one year before Hefley's filing of his patent application on September 18, 2009—*i.e.*, September 18, 2008. *Id.* at 1297. Although the subsection containing the on-sale bar was amended by the Leahy-

No. 21-10626

While the *Energy Heating* Litigation was pending in district court, Phoenix acquired HOTF and the '993 Patent on January 31, 2014. Phoenix's CEO, Fisher, became president of HOTF after the acquisition.

B.

In 2019, Chandler brought *Walker Process* and sham patent litigation claims against Phoenix in the U.S. District Court for the Northern District of Texas. *See Chandler v. Phoenix Servs.*, 419 F. Supp. 3d 972, 977 (N.D. Tex. 2019). A *Walker Process* claim requires showing that (1) the defendant obtained its patent by "knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement," and (2) the plaintiff can satisfy all other elements of a Sherman Act monopolization claim. *TransWeb*, 812 F.3d at 1306. A sham patent litigation claim posits antitrust liability on (1) an "objectively meritless" suit that (2) "conceals an attempt to interfere directly with the business relationships of a competitor." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998) (quoting *Prof. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993)) (cleaned up). This second theory also requires proof of a substantive antitrust violation. *Ibid.* To support its claims, Chandler alleged Phoenix was liable as HOTF's parent company for two anticompetitive acts involving the '993 Patent.

First, in 2013, HOTF sent a cease-and-desist letter to Amerada Hess Corporation ("Hess"), the biggest customer of Supertherm Fluid Heating Services, LLC ("Supertherm"), one of the plaintiff companies here. The letter notified Hess of the '993 Patent and asked it to "undertake the necessary steps to ensure that any possible infringement by your water

---

Smith America Invents Act in 2011, the prior version was in force at all relevant times here. *See id.* at 1297 n.3.

No. 21-10626

heating contractors or subcontractors ceases." Chandler alleged the letter contributed to Supertherm's losing customers and eventually going out of business in 2016.

Second, in 2014, HOTF (now under Phoenix's ownership) asserted the '993 Patent in a separate lawsuit in the U.S. District Court for the Northern District of Texas against Chandler and Newco Enterprises, LLC ("Newco"), two of the plaintiff companies here. *See Newco Enters., LLC v. Super Heaters N.D., LLC*, No. 7:14-CV-87, 2014 WL 11514928, at *1 (N.D. Tex. Dec. 19, 2014) [the "*Newco* Litigation"]. HOTF claimed Chandler and Newco had been "actively and knowingly inducing infringement of the '993 Patent" by their customers.

Chandler and Phoenix cross-moved for summary judgment. On April 13, 2020, the district court denied Chandler's motion and granted Phoenix's. *Chandler v. Phoenix Servs.*, No. 7:19-CV-14, 2020 WL 1848047 (N.D. Tex. Apr. 13, 2020). The court ruled that (1) Chandler lacked standing on its claim for lost profits but had standing to seek attorneys' fees; (2) Chandler's claim was nonetheless time-barred under the four-year statute of limitations, *see* 15 U.S.C. § 15b; and (3) Chandler failed to establish liability for Phoenix under single-enterprise liability or for Fisher under corporate-officer liability. *Chandler*, 2020 WL 1848047 at *7, *12, *15–16. Chandler timely appealed to the Federal Circuit, which found it lacked appellate jurisdiction and transferred the case to this court. *See Chandler*, 1 F.4th at 1014.

## II.

First, we must address our appellate jurisdiction. *See Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999). The Federal Circuit concluded that we, not it, have jurisdiction over this appeal and shipped the case to us. *See Chandler*, 1 F.4th at 1014. That decision is law-of-the-case. *See Christianson*,

No. 21-10626

486 U.S. at 816 & n.5 (1988) ("Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts[,]" including "transfer decisions that implicate the transferee's jurisdiction." (citations omitted)). We will revisit the Federal Circuit's decision only in "extraordinary circumstances such as where [it] was clearly erroneous and would work a manifest injustice." *Id.* at 817 (citation omitted). But "if [we] can find the transfer decision plausible, [our] jurisdictional inquiry is at an end." *Id.* at 819 (citation omitted). We conclude the Federal Circuit's decision was plausible.

The Federal Circuit has exclusive jurisdiction over a district court's final decision "in any civil action arising under . . . any Act of Congress relating to patents[.]" 28 U.S.C. § 1295(a)(1). But here, adhering to its precedent in *Xitronix I*, the Federal Circuit ruled that Chandler's *Walker Process* claim "does not present a substantial issue of patent law" and so falls outside § 1295(a)(1). *Chandler*, 1 F.4th at 1016 (quoting *Xitronix I*, 882 F.3d at 1078). In particular, the court emphasized "[t]he enforceability of the ['993 Patent] is no longer at issue" because its prior *Energy Heating* decision "declared the '993 patent unenforceable." *Ibid.* (citing *Energy Heating*, 889 F.3d at 1302). That makes this case, the court explained, an "even weaker" candidate for Federal Circuit jurisdiction than *Xitronix I*. *Ibid.* Indeed, the court doubted there was even a "'plausible' basis for jurisdiction," because "[t]he patent allegedly being enforced by Phoenix has already been ruled unenforceable" and so "[t]his case will not alter the validity of the '993 patent." *Id.* at 1018.

In transferring the case to us on the strength of *Xitronix I*, the Federal Circuit recognized that our court disagrees with *Xitronix I*. *See id.* at 1016–18 (discussing *Xitronix II*). That is true. Following the transfer in *Xitronix I*, we held in *Xitronix II* that a *Walker Process* claim lacking any non-patent theories falls within the Federal Circuit's exclusive jurisdiction. *See Xitronix II*, 916 F.3d at 443–44. And we not only disagreed with *Xitronix I* but found aspects

No. 21-10626

of its reasoning "implausible." *Id.* at 441. In particular, we doubted its view that the allocation of cases between the Federal Circuit and the regional circuits had been altered by *Gunn v. Minton*, 568 U.S. 251 (2013). *See Xitronix II* at 437–440 (discussing *Gunn*).[4] But even assuming *Gunn* applied in that realm, we deemed it "implausible" under *Gunn*'s own analysis that *Xitronix* failed to present a "substantial" patent issue. *Id.* at 440–43. As a result, we transferred *Xitronix* back to the Federal Circuit. *Id.* at 444.[5]

So, the question is: does our *Xitronix II* decision require us to find that the transfer in *this* case is likewise implausible and must be returned to sender? We think not. The *Walker Process* claim here differs from the one in *Xitronix* in an important respect: as the Federal Circuit pointed out, the '993 Patent has already been declared unenforceable. *See Chandler*, 1 F.4th at 1016 (citing *Energy Heating*, 889 F.3d at 1302). That marks a key difference from *Xitronix*. There, the claim "concern[ed] a patent that [wa]s *currently valid and enforceable*" and "[t]h[e] litigation [thus] ha[d] the potential to render that patent effectively unenforceable." *Xitronix II,* 916 F.3d at 441 (emphasis added). And that was the primary reason we thought the Federal Circuit had erred in its substantiality analysis: unlike the Federal Circuit, we saw a live

---

[4] *Gunn* addressed whether a federal district court had exclusive patent jurisdiction over a state-law legal malpractice case arising from a patent infringement suit. *See* 568 U.S. at 253–56; 28 U.S.C. § 1338. The Supreme Court said no, applying its test for federal-question jurisdiction under § 1331—*i.e.*, whether the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. In *Xitronix II*, we said that "*Gunn* gave no indication that it meant to alter *Christianson* or the allocation of cases among the circuit courts." 916 F.3d at 438.

[5] Although disagreeing with our analysis in *Xitronix II*, the Federal Circuit found our "conclusion that [it had] jurisdiction is not 'implausible'" because "the underlying patent has not expired, and the resolution of the fraud question could affect its enforceability." *Xitronix Corp. v. KLA-Tencor Corp.* (*Xitronix III*), 757 F. App'x 1008, 1010 (Fed. Cir. 2019). So, the court accepted our retransfer. *Ibid.*

No. 21-10626

"dispute about the validity of the patent at issue" and so a fraud finding in the case would "render . . . [the] patent effectively unenforceable in future cases." *Id.* at 439 (citations omitted).

Not so here. The '993 Patent "has already been ruled unenforceable" and so "[t]his case will not alter the validity of the '993 patent." *Chandler*, 1 F.4th at 1018 (citation omitted). Consequently, the merits inquiry "may have little or no need to delve into patent law issues," given Chandler "fail[s] to clearly raise any patent law questions not already addressed in *Energy Heating*" and focuses instead on "the nature of Phoenix's relationship to [Hefley's] inequitable conduct rather than on the conduct before the patent office itself." *Id.* at 1016; *cf. Xitronix II*, 916 F.3d at 441 (observing "[t]his litigation has the potential . . . to declare the PTO proceeding tainted by illegality").

In sum, we cannot find the Federal Circuit's decision implausible. That does not mean, we hasten to add, that it is *correct*. Our precedent dictates a different conclusion, namely that a standalone *Walker Process* claim belongs in the Federal Circuit. *See Xitronix II*, 916 F.3d at 443 ("Patent law is a necessary element of *Walker Process* claims."). But in circuit-to-circuit transfer cases the Supreme Court has admonished us to "adher[e] strictly to principles of law of the case" and to reject transfers only in "exceptional" instances where the transfer was "clearly erroneous" and not "plausible." *Christianson*, 486 U.S. at 819. The point of this restraint is to avoid "a perpetual game of jurisdictional ping-pong" unworthy of "a seemly system of judicial remedies." *Id.* at 818–19 (citation omitted). We will engage in no unseemly jurisdictional ping-pong here. "While we do not agree with some of the legal analysis in the Transfer Order, we nevertheless conclude its ultimate conclusion that we have jurisdiction is not 'implausible.'" *Xitronix Corp. v. KLA-Tencor Corp. (Xitronix III)*, 757 F. App'x 1008, 1008–09 (Fed. Cir. 2019).

No. 21-10626

### III.

On to the merits. The district court granted summary judgment to Phoenix on two distinct grounds. First, it found Chandler lacked standing to pursue *Walker Process* and sham patent litigation claims for lost profits. Second, while Chandler did have standing to pursue such claims for fees spent litigating HOTF's infringement suit, its claims were time-barred and not subject to tolling. Chandler contests both rulings, which we review *de novo*. *Ledford v. Keen*, 9 F.4th 335, 337 (5th Cir. 2021) (citation omitted).

### A.

First, standing. The district court found a lack of injury-in-fact because Chandler failed to prove that HOTF's 2013 cease-and-desist letter materially harmed Supertherm's business. *See Chandler*, 2020 WL 1848047, at *6–7. We agree with the district court.

As a threshold matter, antitrust plaintiffs must show "1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022) (citations omitted). Only the first element is at issue here. Causation is generally a jury question, but if the plaintiff fails "to present substantial evidence that [the] defendant's illegal practices were a material cause of plaintiff's injuries[,]" the court should direct a verdict. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 485 (5th Cir. 2000) (quoting *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1383 (5th Cir. 1979)). The plaintiff need not prove the violation was the sole cause of the alleged injury, "but he does need to show that the violation was a material cause." *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 317 (5th Cir. 1978) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n.9 (1969)). That showing "may not be based on speculation. Rather, the

No. 21-10626

required causal link must be proved as a matter of fact and with a fair degree of certainty." *Ibid.*

Chandler argues that the 2013 cease-and-desist letter HOTF sent to Amerada Hess cost Supertherm work with Hess and eventually drove Supertherm out of business in 2016. As the district court found, however, Chandler failed to establish a "causal link" between the letter and Supertherm's demise. *Chandler*, 2020 WL 1848047, at *7; *see Blue Bird Body*, 573 F.2d at 317. After receiving the letter, Hess did not stop working with Supertherm, nor did Hess hire HOTF or any of Supertherm's competitors who were licensed to use the '993 Patent. *Chandler*, 2020 WL 1848047, at *7. Indeed, after Hess notified Supertherm about the letter in 2013, they never discussed it again. And while Hess gradually reduced its work with Supertherm over the next three years, it hired other vendors who also lacked a license for the '993 Patent. Chandler thus provides no evidence that the cease-and-desist letter injured Supertherm's business with Hess. Chandler merely points to a benign follow-up letter Hess sent Supertherm: "Please remember that as a contractor to Hess you are expected to hold all rights and permissions necessary to . . . perform the services provided." This tells us next to nothing about Hess's decision-making process, nor does it explain why Hess hired other non-licensed contractors in Supertherm's place.[6]

---

[6] Also unavailing is Chandler's reliance on a 2014 email from Phoenix's lawyer, Devan Padmanabhan. Outlining the strategy in suing Chandler for infringement, Padmanabhan wrote "this suit would likely prevent Chandler from continuing to sell similar heaters to competing entities, thereby providing a competitive advantage in the marketplace." Chandler argues this evidence shows Phoenix had a "plan to drive Supertherm from the market," which "succeeded" when Supertherm went out of business in 2016. We disagree. This evidence does nothing to show why Supertherm lost business from Hess.

No. 21-10626

It is true, as Chandler points out, that Supertherm's corporate officers testified fear of lawsuits led Supertherm to decline business from other prospective customers. But "[w]hen the fact of injury is in issue, the 'isolated self-serving statements' of a plaintiff's corporate officers may not provide substantial evidence upon which a jury can rely." *H & B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 247 (5th Cir. 1978) (citations omitted). Instead, Chandler "had to establish a tighter connection between [HOTF's] behavior and [Supertherm's] damages," *Taylor*, 216 F.3d at 485, especially in light of the fact that "the fluctuating oil market and increase in competition among non-licensed fracking providers" were cutting into Supertherm's business. In sum, the district court correctly found a lack of substantial evidence that the cease-and-desist letter materially caused Supertherm's lost profits.

B.

But the district court did find that Chandler had standing to pursue its *Walker Process* and sham litigation claims seeking the fees it had to spend after HOTF asserted the '993 Patent against Supertherm on December 22, 2014, and against the rest of the Chandler plaintiffs on July 18, 2014. Nonetheless, the court found these claims time-barred and dismissed them. Chandler says this was error, but we again agree with the district court.

The statute of limitations for antitrust claims is four years. 15 U.S.C. § 15b; *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 196 (5th Cir. 2021). "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio*, 401 U.S. at 338. "[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date . . . ." *Id.* at 339. At the summary judgment stage, the defendant has the burden of demonstrating accrual. *In re Beef Indus. Antitrust Litig.*, 600 F.2d

No. 21-10626

1148, 1170 (5th Cir. 1979). If the defendant establishes the statute of limitations has run on the plaintiff's claims, the burden shifts to the plaintiff to show that an exception applies to toll the limitations period. *Ibid.*

Chandler sued Phoenix on January 29, 2019. But both of the alleged antitrust violations happened more than four years earlier: (1) HOTF sent its cease-and-desist letter to Hess on September 11, 2014; and (2) HOTF filed its infringement claims against the Chandler parties on July 18, 2014, and December 22, 2014. So, the four-year limitations period has run on Chandler's claims unless Chandler can show the period was tolled. *Ibid.*

Chandler argues for tolling based only on fraudulent concealment.[7] Chandler must therefore show: "first, that [HOTF] concealed the conduct complained of, and second, that [Chandler] failed, despite the exercise of due diligence on [their] part, to discover the facts that form the basis of [their] claim." *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (citation omitted); *see also In re Beef Indus.*, 600 F.2d at 1169. The district court concluded that, even assuming Chandler could show concealment, it did not show its failure to discover the relevant facts despite due diligence.

As the district court pointed out, Chandler's lawyer "was in regular communication with . . . Energy Heating's counsel" in the *Energy Heating* litigation. Chandler's privilege log shows fifty-three emails with Energy Heating's lawyer. And Chandler's counsel confirmed they "certainly reviewed [the] work" of Energy Heating's counsel. This presents an insurmountable problem for Chandler. On December 4, 2014—outside the four-year limitations period—Energy Heating amended its complaint to

---

[7] We have recognized three exceptions for tolling the limitations period: (1) fraudulent concealment; (2) damages not initially ascertainable; and (3) continuing violation. *In re Beef Indus.*, 600 F.2d at 1169; *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051–52 (5th Cir. 1982).

No. 21-10626

provide detailed allegations of HOTF's inequitable conduct in procuring the
'993 Patent. Given Chandler's close relationship with Energy Heating's
counsel, Chandler cannot credibly argue it "exercise[d] . . . due diligence"
and yet failed to discover HOTF's inequitable conduct. *In re Beef Indus.*, 600
F.2d at 1169. The raw facts of that conduct were pleaded in a complaint—
one that Chandler's counsel had every reason to know about—outside the
limitations period.[8] All Phoenix must show at summary judgment is that
Chandler "had access to information that would independently verify th[ose]
allegations." *Allan Constr.*, 851 F.2d at 1533. Phoenix has done so here.
Chandler cannot escape its "duty to investigate" when it "learned of facts
'calculated to excite inquiry.'" *In re Beef Indus.*, 600 F.2d at 1171 (quoting
*Clement A. Evans & Co. v. McAlpine*, 434 F.2d 100, 102 (5th Cir. 1970)).

Chandler argues this was error because the facts alleged in Energy
Heating's complaint were "susceptible to opposing inferences." In other
words, the *Energy Heating* Litigation could have gone the other way on
Hefley's deceptive intent in procuring the '993 Patent. Chandler
misunderstands the tolling inquiry. The question is not when Chandler
would have a definitive judicial resolution of Hefley's conduct, but whether
Chandler was on notice of facts suggesting a potential claim. Chandler was.
*See, e.g.*, *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 341 (5th Cir. 1971)

---

[8] Moreover, in the HOTF-Chandler litigation in the Northern District of Texas,
Newco and Chandler asserted the on-sale bar as a basis for the '993 Patent's invalidity.
That assertion appeared in a document filed on October 27, 2014—four years and three
months before the filing of the complaint in this case. Chandler's patent attorney would
later confirm in a 2020 deposition that the contention of invalidity was based on Hefley's
use of the invention for more than a year before the application. This evidence further
confirms that Chandler knew about the underlying facts of this antitrust case outside the
four-year limitations period.

No. 21-10626

("Once [the] plaintiff is on inquiry that it has a potential claim, the statute can start to run." (citation omitted)).

Because the district court correctly ruled that tolling does not apply, Chandler's claims are time-barred.[9]

## IV.

The district court's judgment is AFFIRMED.

---

[9] We therefore do not consider the district court's alternative ruling that neither Phoenix nor Fisher can be held liable under single-enterprise or corporate-officer standards of liability for HOTF's alleged antitrust violations.